BLACKWELL'S DURHAM TOBACCO COMPANY v. JOHN H. McELWEE.

*Evidence, § 590—Objections to Evidence—Effect of Forbearance to Sue for Unlawful Use of Trade-Mark.*

1. In a legal controversy concerning the ownership of a trade-mark, plaintiff claimed title to the same under one G. Defendant also claimed an interest in the trade-mark, acquired, as he alleged, in association with, or by virtue of transactions with G.; *Held,* that defendant could not be heard to testify as to any dealings or transactions between himself and G.—who was then dead—with reference to the subject of the controversy.

2. Where a copy is offered in evidence and objection is made, not on the ground that the original is not produced, but on some other specified ground, the objection that the paper is not primary evidence cannot be made in the appellate Court.

3. Plaintiff introduced in evidence a copy of defendants's application for registration of a trade-mark. Defendant stated, on his examination as a witness, that the paper was a copy of his application; *Held,* that it was proper to allow plaintiff to require defendant to state that there was a proceeding or declaration interfering after his application was filed, as such answer tended to show that there had not been a quiet acquiescence in the validity of defendant's claim to ownership of the trade-mark, and a submission to it.

4. Allowing an improper question to be asked cannot be assigned for error if the witness makes no response to it.

5. As between two adverse claimants of the invention and sole ownership of a trade-mark, no greater force is to be given to the fact that one of the parties used the trade-mark for several years without being molested therein by the other, than that of evidence tending to disprove the claim of the other. Such forbearance on the part of the true owner, beyond its weight in disproving his title, cannot have the effect of extinguishing his rights, or operate beyond barring an action under the statute of limitations, or a presumption of an abandonment. But such indulgence may be deemed such an assent to the use of the trade-mark as would not entitle the owner to demand damages for its intermediate use.

6. Upon an issue as to the title to a trade-mark, a witness testified on the trial, without objection, "the plaintiff owns it now ;" *Held,* that, there being no contradictory evidence, it was proper to leave the jury to pass upon it, although it had been previously shown that B. was formerly the owner and there was no other proof offered of a transfer from B. to the plaintiff.

CIVIL ACTION, tried before *Shepherd, J.,* and a jury, at August Term, 1887, of DURHAM Superior Court.

Verdict and judgment for plaintiff. Defendant appealed.

*Messrs. A. W. Graham, John W. Graham* and *W. W. Fuller,* for the plaintiff.

*Mr. John Devereux, Jr.,* for the defendant.

SMITH, C. J.  The nature and purpose of the present action, as set forth in the pleadings, are restated and explained in the opinion of the Court, when the case was before us upon a former appeal, 94 N. C., 425, and dispense with a repetition of the facts. Upon the last trial, at September Term, 1887, of Person Superior Court, issues were submitted and answered, as follows :

1. Is the plaintiff, as against the defendant, entitled to the sole and exclusive use of the device or symbol of a bull in connection with the words smoking tobacco, when attached to packages of smoking tobacco ? Answer, " Yes."

2. Is the plaintiff entitled to the sole and exclusive use of, as against the defendant, the label, sign and trade-mark mentioned in his complaint and set forth in his exhibit ? And if not to all of said trade-mark, to what part or parts of it ? Ans. " Yes, all."

3. Has plaintiff been damaged by the defendant unlawfully affixing or annexing to packages of smoking tobacco manufactured or sold by defendant, defendant's labels containing plaintiff's trade-mark, or any part of it ? Ans. " No."

The plaintiff derived its claim to the property in, and the

exclusive right to use the trade-mark device and label in dispute, under one J. R. Green, and the defendant introduced evidence to show that, in the fall of 1865, himself and Green, who were partners and manufacturers of smoking tobacco, originated and adopted the same trade-mark, and used it upon their goods manufactured at Durham.   In the progress of the trial bfore the jury, the plaintiff offered in evidence a certified copy of a copyright issued to Green, which, after objection from the defendant, was admitted, and it was afterwards ruled out, and the jury directed to disregard it.

The defendant's counsel proposed to ask him, what interest, if any, he, the witness, had in the trade-mark at the time when he was manufacturing tobacco at Rowan Mills?   This inquiry was not allowed, for the same reason, that the interest, as the witness had already stated, was acquired in association with Green, and grew out of a transaction between them.

A similar question, " when was the trade-mark originated?" was, upon the same grounds, not permitted to be answered by the witness.

These rulings form the subject of the three exceptions mentioned, and, we think, come clearly within the inhibitions of the statute, and the evidence was properly excluded, as coming from a party to the transaction with one under whom the plaintiff claims.

5.  The next exception was to the introduction, by the plaintiff, of a certified copy of the defendant's application for registration of his claimed trade-mark, admitted to be in due form, and resisted on the ground that the law under which it had been filed was unconstitutional.   It was permitted to be read as a declaration of the defendant.   The defendant said, in his further examination, that he applied for such registration, and that the paper referred to, and handed the witness, was his said application ; but he did not remember that he claimed an exclusive right in the trade-mark.   The

plaintiff then inquired, was there not a proceeding or declaration interfering after you filed the application? Upon objection made and overruled, the witness answered, "Yes."

It is to be observed that the objection is not to the character or quality of the evidence, as secondary, and not admissible under section 4940, of the Revised Statutes of the United States, but because the Constitution allows no such exclusive right to the use of a trade-mark to be thus secured to the inventor. Regarding the copy as if the original had been produced, and to this, and for the reason that it was not primary evidence, objection to be available should then have been made; *Bridgers* v. *Bridgers*, 69 N. C., 451; *Gidney* v. *Moore*, 86 N. C., 485; *State* v. *Kemp*, 87 N. C., 538, and put upon proper ground.

The answer to the last question was sought, to show that there had not been a quiet acquiescence in the validity of the defendant's claim to ownership of the trade-mark, and a submission to it. Offered for such purpose, we find no just ground for exception to its reception.

7. The objection to an inquiry of the defendant, whether he had ever sued any one for an infringement of his alleged right to the trade-mark. This was followed by an answer that he had sued no one but Blackwell & Carr, and the answer was received as tending to qualify and explain his previous testimony as to his use of it, and the time and place, when and where it had been so used, and for this object was competent.

8. The inquiry put to S. A. Sharpe, a witness for defendant, as to the character of the witness Geo. F. Shepherd, whose deposition had been read, and if there were not, in his community, many hard reports in regard to his reputation, if liable to objection, is freed from it by the answer—" I have heard of none." *Bost* v. *Bost*, 87 N. C., 477.

The next exceptions are to instructions asked and refused, and to the instructions given to the jury.

The defendant's counsel asked the Court to charge the jury:

1. That if they find from the testimony, that the defendant was, at any time, in the open, public, and continuous use of the trade-mark in question, by placing it on packages of smoking tobacco, and placing such packages upon the market, in North Carolina and elsewhere, for the space of *three* years, with the knowledge of plaintiff, or of those under whom it claims before plaintiff became their assignee, and neither plaintiff or those under whom it claims took any legal proceedings to stop or restrain defendant in the use of said trade-mark, there being during these *three* years no legal proceedings by defendant against plaintiff, or those under whom it claims, involving defendant's right to so use said trade-mark, then the jury ought to find, that, as against defendant, plaintiff is not entitled to the exclusive use of said trade-mark.

2. I ask the above instructions in the same words as above, only substituting the words *two years* for the words three years, in the two places where they occur in No. 1, as asked above.

3. I ask the same instructions as are asked in No. 1 above, substituting the words *one year* for the words three years, in the two places where they occur in No. 1, as above.

4. If Nos. 1, 2 and 3, as asked above, are all refused by the Court, then I ask the instruction as asked in No. 1, substituting *seven years* for three years, in the two places where they occur in No. 1, as above.

5. I ask his Honor to tell the jury, that if they believe the witness J. S. Carr, then he had notice in the year 1872, that defendant was using the said trade-mark on packages of smoking tobacco; said Carr was then a partner with W. T. Blackwell, under whom plaintiff claims, in the use of said trade-mark.

6. I ask his Honor to tell the jury, that there is no evidence of any legal proceeding or litigation involving the right of plaintiff, or those under whom it claims, or of defendant, to use said trade-mark, being instituted by either plaintiff, or those under whom it claims, or by defendant, before the year 1880.

R. F. ARMFIELD,
*Att'y for Defendant.*

If No. 6 is declined, then I ask it with the modification, before the 23d July, A. D. 1877.

R. F. ARMFIELD.

The Court gave instructions 1, 2, 3 and 4, with this modification :

" But if you believe that the plaintiff, or those under whom it claims, did no act or thing by which the defendant was induced to believe that it had abandoned its alleged exclusive right to use the said brand, and the plaintiff and those under whom it claims had been in the continual use of said brand from its invention and adoption to the present time of the commencement of this suit, claiming the exclusive right to use it, and that whenever they had notice of the use of the same by the defendant, they promptly interfered with such use by threats to sue, seizure of the tobacco so labeled or put on the market by defendant, notice to defendant's purchasers of the same, or by such other acts and declarations known to defendant, by which the defendant knew that the plaintiff and those under whom it claims at all times claimed the exclusive right to use said brand, and at all times after notice of the use by defendant, denied and contested the right of the defendant to use it, then the failure to bring said suit, within the periods mentioned, would not take away the plaintiff's exclusive right to use the same."

To this modification the defendant excepted.

The Court gave the 5th instruction as prayed for.

The Court declined to give the 6th and 7th instructions, stating to the jury that they might consider the evidence of the defendant and the witness Allen as some evidence on these points.

Defendant excepted.

There was a verdict for the plaintiff on the first two issues, and to the issue as to damages the jury found that no damage had been sustained by plaintiff.

The defendant moved for a new trial on the following grounds:

For that the Court admitted incompetent evidence against and excluded competent evidence for him;

For error in refusing instructions asked, and giving others in their place; and,

For that, in the absence of any proof to connect the plaintiff with W. T. Blackwell in the alleged ownership, it was left to the jury to so find.

The motion was denied, and judgment being rendered for the plaintiff, the defendant appealed.

The instructions requested are embodied in one general proposition, varying as to the interval of time only, that the inaction of the successive alleged owners of the trade-mark, to put a stop to the use of it by the defendant, by a restraining judicial order, or other means, when aware of the continued infringement, and the same course pursued by the defendant, asserting, but not enforcing, his own claim thereto, warrant the jury in finding the first issue in the negative.

As the question between the parties is, as to the invention and appropriation of the trade-mark, whereby a proprietary and sole right to its use is acquired, we do not see why any other force should be given to the supposed acquiescence in the defendant's alleged invasion, than that of evidence tending to disprove the claim itself.

The modification, in the charge, presented the matter in

another aspect, leaving to the jury to pass upon the evidence, and derive such conclusions as were warranted by it. Of the charge, considered as a whole, the defendant has no just cause of complaint. If his contention, as expressed in the instructions asked, was that the proprietor's right was lost by such forbearance, although it was already vested, we cannot give it our sanction. The delay in vindicating an invaded right, beyond its weight in disproving its existence, cannot have the effect of extinguishing it, or operate beyond barring the action under the statute of limitations or a presumption of an abandonment. The indulgence may be deemed such an assent to the use of the device, as would not entitle the owner to demand damages for its intermediate use, and so, accordingly, none are awarded against the defendant.

As is held in *Taylor* v. *Carpenter*, 2 Woodb., & M., 1, a long delay in prosecuting the claim after knowledge of the wrong, would be competent evidence of acquiescence in it, but could be no bar to a recovery, unless extended to the period presented in the statute of limitations.

The last error assigned, is, that the jury were permitted to connect the plaintiff in ownership with W. T. Blackwell, from whom it is alleged to have been derived, without any evidence of a transfer.

The testimony of J. S. Carr was, (and that without objection,) that "the plaintiff company owns it now," referring to the trade-mark, and there being no controversy upon this point during the trial, this seems to have been received as sufficient proof of the fact of transfer, and it was proper to let the jury pass upon it.

We find, therefore, no error in the record, and the judgment is affirmed.

No error.                                    Affirmed.