## Case No. 17,711.

WILLIAMS et al. v. ADAMS et al.

[8 Biss. 452; 7 Reporter. 613: Cox, Manual Trade-Mark Cas. 387; 11 Chi. Leg. News. 249.] [1]

Circuit Court, N. D. Illinois.   April 14, 1879.

TRADE-MARK—ABANDONMENT—"YANKEE."

1. Abandonment of a trade mark is not made out by showing numerous infringements in which the owners of such trade-mark have not acquiesced.

2. The term "Yankee" applied as the name or label upon soap, *held*, to be a valid trade mark.

In equity. Bill to restrain the use of a trade mark. The alleged trade mark is the use of the word "Yankee," as a label or mark to designate the complainants' manufacture of a certain kind of shaving soap. The bill set up that the firm of Williams Brothers, in 1846, commenced at Manchester, Connecticut, the manufacture of a superior article of shaving soap, or toilet soap, to which they gave the name "Yankee Soap," or "Yankee Shaving Soap." That shortly afterwards the business place of the firm was removed from Manchester to Glastonbury, Connecticut, and the complainants' firm, as successors of the original manufacturers, have succeeded to all the rights of the original firm of Williams Brothers; and that the defendants [Charles L. Adams and others] were putting upon the market an inferior article of shaving soap, which they labeled "Yankee Williams' Shaving Soap." The complainants [James B. Williams and others] claimed the exclusive right to use the word "Yankee," having adopted it at an early day as a trade mark, designating their manufactured goods.

H. B. Hurd, for complainants.
Banning & Banning, for defendants.

BLODGETT, District Judge. I am satisfied that the complainants' case is fairly made out. The proof shows that they did enter upon the manufacture of this class of soap, as the bill alleges, and adopted this word "Yankee" as the mark or designation of their goods, and have used it from the time of its adoption to the present.

The defendants, on the contrary, claim that the complainants have abandoned the use of this word as their trade mark; that they have allowed other manufacturers to infringe upon it by putting their soaps upon the market under the designation of "Yankee," as, for instance, "Yankee Jim," "Yankee Sam," and under other labels in which the word "Yankee" is the controlling or leading term, whereby complainants' exclusive claim of right to the use of the word "Yankee" has been infringed; and that complainants have so acquiesced in these infringements as to have abandoned their exclusive right to the use of the word "Yankee."

I do not find this position sustained by the testimony. The complainants seem to have been diligent in prosecuting all persons who infringed upon their rights within a reasonable time after they became aware of such infringement. It is true that the proof shows that quite a large number of manufacturers are putting shaving soaps upon the market under the term or description of "Yankee," such as "Yankee Sam Soap," "Yankee Jim Soap," and the "Yankee Soap," which last is precisely like the complainants', and there are various other imitations of the complainants' goods, shown in the proofs. But I do not understand the rule to be, that if a party infringes upon another's trade mark there is any fixed time in which he must bring suit in order to save his rights. Certainly,

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 7 Reporter. 613, and Cox, Manual Trade-Mark Cas. 387, contain only partial reports.]

there is no such neglect on the part of the complainants proved here, as would show an intention to abandon their trade mark.

The other point, that the word "Yankee" cannot be adopted by any person as a trade mark, is presented with a good deal of vigor and ingenuity by defendants' counsel, and with a show of authority. A Mr. Browne has written a book on trade marks, which to some extent, I think, is accepted by the profession as an authority, in which he sums up his own conclusion as to the principle decided in a certain trade mark case, and says: "It clearly appears from the foregoing case, that words designating localities, places or persons, such as London Dock Gin, Yankee Soap, etc., cannot be adopted or used as a trade mark." Browne, Trade-Marks, §§ 119–125, 597.

It is sufficient to say in reference to this paragraph, that Mr. Browne is not a court; that he was simply enforcing his own individual views or conclusions from certain adjudged cases. Now, it seems to me by all the analogies, that a manufacturer, especially a manufacturer thirty years ago, would have had the right to adopt the term "Yankee" as applicable to some specific kind of goods, and make it a valid trade mark.

We must remember that the term was not as generally applied then as it is now. At that time, certainly, the term "Yankee" was applied to the inhabitants of but a small portion of the United States—to a small portion of the New England states. For instance, in Western Massachusetts they would speak of the inhabitants of the eastern part of that state, and along the coast from Boston, to Portland, Maine, as "Yankees." The eastern shore people were called "Yankees" in New England. In the Southern, and perhaps some of the Western states, all people in the New England states were spoken of as "Yankees," and since our unfortunate national Rebellion, it has been quite common at the South to speak of all persons who remained loyal to the federal government as "Yankees." The term has been enlarged by use, undoubtedly, very much within the last fifteen or twenty years. In 1846, the time the complainants entered upon this manufacture, the term "Yankee" was restricted, and applied solely as a nickname or epithet to the inhabitants of some parts of the New England states, but it was not a term describing a specific locality or place, or person. It is not a geographical term, nor a proper name, but a designation applied by the dwellers in one locality to the dwellers in another place. It was not the name of any certain locality, and it seems to me complainants had the right to adopt it as their trade mark. If it has since that time, by a more general use and definite application, come to designate any certain locality—which is not conceded—such subsequent events cannot defeat complainants' right. The complainants have made such a case as entitles them to an injunction perpetually restraining defendants from using the word "Yankee" in any label or mark up-

on their soaps, and the case will be referred to the master to take proof as to the damages which the complainants have sustained.

See, also, Roberts v. Sheldon [Case No. 11,916.]