## G. G. WHITE Co. *v.* MILLER *et al.*

*(Circuit Court, D. Massachusetts. April 27, 1892.)*

1. TRADE-MARK—INFRINGEMENT—BOURBON WHISKIES.

Plaintiff and his predecessors have long used upon their whiskey barrels a trade-mark consisting of a picture of a chicken cock standing upright, within a circle surrounded by the words, "Old Bourbon Whiskey, Bourbon Co., Ky.," and below the picture the words, "From J. A. Miller, Paris." For over 30 years this brand has been known to the trade as "Miller's Chicken Cock Whiskey" or "Chicken Cock Whiskey." Defendants, doing business in Boston, adopted a like picture, including the circle; their brand being called "Miller's Game Cock Rye." On the label, in smaller type, are the words: "The King of all Whiskies. John Miller & Co., Sole Proprietors, Boston, Mass." *Held* an infringement; and it is immaterial that defendants use the device both upon barrels and bottles, while plaintiff has heretofore used it only on barrels, and that defendants' whiskey is a "blended" whiskey, having but one stamp, while plaintiff's is a "straight" whiskey, having two stamps.

2. SAME—PRELIMINARY INJUNCTION.

A preliminary injunction against the use of a trade-mark will be granted when from the affidavits the court is satisfied of the infringement, unless there are special circumstances which take the case out of the general rule.

In Equity. Bill by the G. G. White Company against John Miller *et al.* for infringement of trade-mark. On motion for a preliminary injunction. Granted.

*Avery & Hobbs,* for complainant.

*Russell & Putnam,* for defendants.

COLT, Circuit Judge. This is a motion for a preliminary injunction. As early as 1856, James A. Miller, of Paris, Bourbon county, Ky., who was then engaged in the business of manufacturing and selling whiskey, designed and adopted a certain trade-mark, which is the subject-matter of the present suit. The complainant, through mesne conveyances from Miller, became and is now the exclusive owner of said mark. The trade-mark consists of the representation or picture of a chicken cock standing upright within a circle surrounded by the words, "Old Bourbon Whiskey, Bourbon Co., Ky.," and within these encircling words, and below the representation or picture, are the words, "From J. A. Miller, Paris." This whiskey, for more than 30 years, has always been known in the trade as "Miller's Chicken Cock Whiskey" or "Chicken Cock Whiskey," and it has been noted for its high grade and uniform excellence; and this mark has been stamped upon every barrel or package of whiskey made or sold by Miller or his successor in the business. The defendants are the firm of John Miller & Co., doing business as wholesale liquor dealers in the city of Boston. About the year 1887 the defendants adopted a brand or trade-mark for their whiskey which consists of a cock standing upright, inclosed in a circle, and which is called "Miller's Game Cock Bourbon" or "Miller's Game Cock Rye." There is also printed on the label in smaller type, and underneath the picture, the words, "The King of All Whiskies. John Miller & Co., Sole Proprietors, Boston, Mass." In 1885 the defendants adopted a label for their whiskey which varied in some particulars with the form above described.

It appears that this earlier form was only used to a limited extent, and has now been abandoned. Upon a comparison of these two marks, they appear in all essential characteristics to be almost identical. The main feature of the mark in each case is the representation of a cock standing upright. The name of Miller on each label is the same. The designation of the one as "Miller's Chicken Cock Whiskey" or "Chicken Cock Whiskey," and of the other as "Miller's Game Cock Whiskey" or "Game Cock Whiskey," is the mere substitution of the word "Game" for "Chicken;" and this difference, together with other minor differences, are not enough to protect the defendants in the use of what is distinctively the complainant's mark. A glance at the two marks shows that the defendants have taken bodily the picture or representation which forms the complainant's trade-mark, and appropriated it to their own use. To my mind the infringement is so clear that it requires no further discussion; and, if there is any defense to this motion, it must rest upon some other ground.

The complainant uses its trade-mark upon barrels of whiskey. The defendants use their mark upon barrels and upon bottles of whiskey, but more extensively upon the latter. The complainant's whiskey is what is known as "straight" whiskey,—that is, a whiskey coming directly from the distillery; and the barrels have two stamps upon them, —one stamp being fixed when it comes from the distillery and goes into the government bonded warehouse, and another stamp when the tax is paid and the barrel taken out. The defendants' whiskey is what is known as a "blended" whiskey; that is, it is made under a rectifier's license, by blending together whiskey of different grades, on which the tax has been paid. When the whiskey is put into barrels the gauger affixes one stamp, and it is then ready for the market. It is strongly urged by the defendants that, owing to these circumstances, no one would be deceived into purchasing the "Game Cock Whiskey" for the "Chicken Cock Whiskey," and that, therefore, they are justified in using their mark. But it surely cannot be said that, a person having a valid trade-mark, which he uses upon one form of package, another person can adopt the same mark upon the same form of package, and is justified in its use because he also puts it upon another form of package. Nor is is very material whether the barrels have one or two stamps upon them, or whether one kind of whiskey is straight and the other blended, or the price of one is a little greater or less than the other. It may be that, owing to these differences, no expert or dealer in whiskies would be deceived into purchasing the one for the other. This, however, does not constitute a sufficient defense. The real question is whether the resemblance between the two marks is not so close that the public would be likely to be deceived, and thus enable the defendants to succeed in palming off their goods as those of the complainant. Suppose, for example, the complainant, or those who purchase from the complainant, should decide to put up the "Chicken Cock Whiskey" in bottles with a label representing their trade-mark; it is evident to me that the public would be likely to be deceived into buying the defendants' whiskey for that of

the complainant. The complainant has a right of property in this trademark, and it has a right to use it upon packages of different form, which contain its whiskey; and the defendants have no right to adopt a mark so near like it as to be liable to deceive purchasers, whatever the size or form of the package may be.

The granting of a preliminary injunction depends upon the special circumstances of each case. This case has been fully tried upon affidavits. I do not see what new proof could be brought forward by either side at final hearing. There is little dispute of fact, and the question is mainly one of law, namely, whether the two marks are so similar that the defendants should be enjoined from the use of the one they have adopted. In a case of this character, if the court has no doubt on the question of infringement, an injunction should be granted at this stage of proceedings, unless there are special circumstances which take the case out of the general rule. I do not find any such special circumstances in this case. The defendants contend that it would work irretrievable injury to them to grant this motion, but this position is not supported by the proofs. The defendants are liquor dealers, and they put this label upon one kind of liquor sold by them. It is true that money has been spent by them in advertising, but the only injury in restraining them from the use of this label will be to oblige them to put some other form of label on this particular brand of whiskey, which is not an infringement of the complainant's trade-mark.

Nor do I think the complainant has been guilty of laches, considering the distance from Boston where the complainant's distillery is established, and the fact that the evidence goes to show that Mr. White, one of the proprietors of the complainant company, had no knowledge of the defendants' label prior to 1889, and this suit was brought in 1890.

Upon the whole, I am satisfied that the complainant is entitled to an injunction; and it is so ordered.