RORKE v. SOCIETE DES HUILES D'OLIVE DE NICE et al.

(Supreme Court, Appellate Division, First Department. .February 5, 1897.)

INJUNCTION PENDENTE LITE—SUFFICIENT CAUSE.

An injunction pendente lite against the use of a trade-mark should be
granted where plaintiff's ownership is established as against one defendant by
a former adjudication, and as against the other, who was his former partner,
by plaintiff's purchase of the trade-mark at an auction sale of the assets of
the firm.

Appeal from special term, New York county.

Action by James Rorke against the Société des Huiles d'Olive
de Nice and another for an injunction pendente lite. From an or-
der denying plaintiff's motion for the injunction, he appeals. Re-
versed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTER-
SON, O'BRIEN, and INGRAHAM, JJ.

G. A. Strong, for appellant.

George Putnam Smith, for respondents.

PATTERSON, J. This is an appeal from an order denying the
plaintiff's motion for an injunction to restrain the defendants from
using a trade-mark, or label, the ownership of and the exclusive
right to use which is claimed by the plaintiff. The court below
refused to grant an injunction pending suit, on the ground that
the plaintiff had not made out a sufficient case for an injunction,
it appearing that all the equities were denied in the papers used
in opposition to the motion.

An examination of the record satisfies us that the injunction
should have been granted. It was incumbent upon the plaintiff
to show, in order that he might be entitled to this injunction, that
he was in fact the owner of the trade-mark, entitled to its exclusive
use, and that the defendants were wrongfully and to his detri-
ment using or imitating that trade-mark, or label. Those things
were abundantly shown. The plaintiff's ownership was not only
made out by independent or original proof, but as between him and
the defendant society it had been established by an adjudication.
of this court. The facts as they appear in this connection are the
following, viz.: The plaintiff and the defendant Dwyer, prior to
October, 1893, composed the firm of T. N. Dwyer & Co. They were
merchants in the city of New York, and dealers, among other things,
in olive oil imported from Nice, in France. In the conduct of
their business they had designed and used a trade-mark, or label,
a specimen of which is set out in the complaint. That label was
only used as designating goods imported and sold by that firm.
The trade-mark, or label, did not belong to the manufacturers or
exporters of the goods. Those goods were not sold by T. N. Dwyer
& Co. as the agents of the exporters, but that firm bought and paid
for, under certain contracts, the goods they imported and sold in
this country. Originally, they bought goods of one Normandin &
Co., then of one Audemard; afterwards of the Société des Huiles,

etc.   The oil, when purchased in France, was bottled by the manu-
facturers, and the label designed and used by Dwyer & Co. seems
to have been put upon the bottles in France by the manufacturers
of the oil; and, when Dwyer & Co. ceased to buy oil of Normandin
& Co., labels in the possession of, but not used by, the last-named
firm were sent to Audemard, and while Dwyer & Co. carried on
business with him such labels were put on the bottles bought from
him, and when they ceased dealing with him, and began to trans-
act business with the société, labels of Dwyer & Co. were put on
the bottles by the société, but Dwyer & Co. always paid for them.
After October, 1893, difficulties arose between Dwyer and Rorke,
and a bill was filed to dissolve the partnership existing between
them.   At that time they were importing the oil of the société un-
der a written contract.   In that action receivers were appointed,
by consent, and those receivers were authorized to sell all the
assets and property of the firm, among such assets and property
being the trade-mark, or label, and the contract with the Société
des Huiles.   The sale was at auction, and consequently was open
to competition; but in the nature of things the trade-mark and the
label were property of such a character that competition would
necessarily be restricted to the two partners of the firm.   Rorke
bought in the trade-mark and label, and the fact that Dwyer al-
lowed him so to do is acquiescence on his part in the purchase made
by his former partner; and that is sufficient to estop Dwyer from
making any claim to a right to use that trade-mark adversely to or
in competition with Rorke, for in the adjustment of the co-partner-
ship business by the receivers he (Dwyer) received whatever bene-
fit may have been derived from that transaction.   But as to the
société the plaintiff's ownership is established by an adjudication
of this court.   That société brought an action against Rorke to
restrain his use of the trade-mark and label.   Issue was joined,
Rorke setting up his right and title.   The société claimed that it
owned the trade-mark, and that Dwyer & Co. were merely its
agents, and used the trade-mark as its agents.

On the trial of the cause the court found, as matter of fact, that
the société was not the owner; that Dwyer & Co. did not use
the trade-mark, or label, as its agents, but, on the contrary, that
it was the property of that firm.   The judgment of the trial court
was affirmed by the appellate division, and that question respect-
ing the ownership was set at rest by the adjudication in the action
referred to, and is conclusively established so far as any matter
litigable between the parties to this action is concerned.   It is as-
serted, however, by the defendants, that the label and trade-mark
were originally devised only to designate oil produced and sup-
plied by particular shippers, namely, Audemard, and, afterwards,
the société; and that, by virtue of the relations established between
the société and Dwyer & Co., the plaintiff must be restricted in the
use of his property right in the label and trade-mark to oil manu-
factured or produced by the société.   That position is not maintain-
able.   The label and trade-mark were not designed to indicate
any particular manufacture of oil, except such as was produced at

Nice, in France. Dwyer & Co. devised and used the trade-mark long before purchases of oil were made either from Audemard or the société, and there was nothing, so far as these papers show, in the contracts either with Audemard or the société, which limited Dwyer & Co. to the use of the labels or trade-mark upon oil produced by them only.

It does not lie with the société to say that Rorke cannot use this label and trade-mark in his business as a merchant selling olive oil produced at Nice. It declines and refuses to sell him oil, although it was notified that he was the purchaser of the contract on the sale of the assets of the co-partnership of which he was a member. We do not mean to say that the société was bound to sell him oil, but it cannot be heard to say that Rorke cannot use the trade-mark and the label which he purchased; and Dwyer is estopped from so saying, because of the title and ownership which was conferred upon the purchaser by the assignment made by the receivers, and from which, presumably, he received whatever benefit may have arisen out of the payment of the purchase money. Nor is there anything at all in the claim that the plaintiff is making false representations or deceiving the public in the use he makes of the label and trade-mark. There is nothing whatever to indicate on the face of the label that Rorke is selling the oil of the société. Its name does not appear in any way on the label or trade-mark. On the contrary, it plainly appears that it is not the oil produced by the société that is sold by the plaintiff, but the oil of one Louis Caisson & Co. The equities of the case, notwithstanding the defendant's denial, are altogether with the plaintiff, and the court below erred in refusing to grant the injunction applied for.

The order must be reversed, with $10 costs and disbursements, and the motion for an injunction granted, with $10 costs to abide the event. All concur.

---

BUFFALO GERMAN INS. CO. v. THIRD NAT. BANK OF BUFFALO.

(Supreme Court, Special Term, Erie County. February 4, 1897.)

1. PLEDGES—SALE AFTER DEATH OF PLEDGOR.
    A pledge subject to sale on default may be sold after pledgor's death on demand for payment of his executors and notice of sale to them.

2. CORPORATIONS—STOCKHOLDERS—NOTICE OF TERMS OF CERTIFICATES.
    A purchaser of stock certificates which give the corporation a lien on the stock to secure any indebtedness of the original holder of such certificates takes the stock subject to the lien, though he has no knowledge thereof, the presumption that he read the certificates being conclusive.

3. NATIONAL BANKS—LOAN ON CAPITAL STOCK.
    A contract lien of a national bank on shares of its capital stock to secure a loan which it has made thereon is valid, since Rev. St. U. S. § 5201, forbidding national banks to loan on their capital stock, provides no penalty for its violation, and only subjects the bank to proceedings by the United States to annul its charter.