# W. A. GAINES & COMPANY, Respondent, v. E. WHYTE GROCERY, FRUIT & WINE COMPANY, Appellant.

## Kansas City Court of Appeals, May 30, 1904.

1. **TRADE MARKS: Infringement: Limitations: Injunction.** Section 4272, Revised Statutes 1899, does not apply to actions restraining infringements of trade marks

2. **———: Property In: User.** Right to use a trade mark is property but only when appropriation and use indicate the origin or ownership of a commercial article.

3. **———: . Unfair Competition: . Limitation.** The underlying principles involved in trade marks and unfair competitions are the same and the statute of limitations is as inapplicable to the latter as to the former.

4. **———: Adverse User: Notoriety:** The use of a trade mark does not in itself establish a right but the use must be adverse and as such brought home to the owner.

5. **———: Limitations: Evidence.** The evidence regarding the use by the defendant of the words "Old Crow" as a trade mark is considered and held insufficient to establish adverse possession ripening into the right to use.

6. **———: Title To: Pleading: Evidence.** The plaintiff is not required to prove all the sources of title alleged in his petition but only enough of them to show title in himself.

7. **———: Abandonment Of: Effect.** When a trade mark is given up with no intention to resume it, such action amounts to an offer of it to the public and anyone may accept it and acquire a valid title against the originator.

8. **———: Limitations: Evidence: Injunctions.** The evidence is examined and it is held that plaintiff is not guilty of such laches as to estop it from seeking injunctive relief against the defendant for using the trade mark "Old Crow Whiskey" on whiskey not manufactured by the plaintiff.

9. **———: Unfair Competition: Fraud.** Where one has established a business and given its product a name which indicates its source and origin, no other person may use the name

in a way to indicate that his goods are the product of the former, and such unfair competition will be restrained in equity.

10. **TRIAL AND APPELLATE PRACTICE: Special Finding:. Harmless Error.** The statutes in relation to a special finding apply alike to actions at law and suits in equity; but the failure to make such a finding in an equity case is not reversible error, since the appellate court in such cases makes its own finding of facts and applies its own conclusions of law in relation thereto.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

Affirmed.

*Charles R. Pence* and *Walter Poston* for appellant.

(1) Under the facts of this case, which are undisputed in relation to the defendant's continuous use of the words "Old Crow" upon their labels for a period of twenty-three years, the statute of limitations is a complete defense to the plaintiff's action. Our statute applies to all civil actions, whether legal or equitable. Rogers v. Brown, 61 Mo. 192; Hunter v. Hunter, 50 Mo. 445; White v. Pendry, 25 Mo. App. 542; Gordon v. Lewis, 88 Mo. 381; Reed v. Painter, 145 Mo. 341. (2) The statute applies to actions for the infringement of trade-marks. Northcutt v. Turney, 101 Ky. 314; Taylor v. Carpenter, 2 Wood. and M. 1; Fullwood v. Fullwood, L. R., 9 Ch. Div. 176; Grand Lodge v. Graham, 96 Ia. 615; Blackwell v. McElwee, 100 N. C. 150. (3) In cases of this character, after the running of the statute, a prescriptive right is acquired by the defendant, and a subsequent suit can not be maintained. Cooley on Torts, p. 613 and cases cited; McGowan v. Railway, 23 Mo. App. 203; Bird v. Railway, 30 Mo. App. 379; James v. Kansas City, 83 Mo. 570; Campbell v. Holt, 115 U. S. 620; 1 Am. and Eng. Ency. of Law (2 Ed.), 874; Bollman Bros. v. Peake, 96 Mo. App. 253. (4) Plaintiff

can not recover upon the theory of an abandonment of this trade-mark by its originators and rightful owners and its subsequent adoption by plaintiff's predecessors, for the reason that no such allegations are contained in the amended petition, which states that the mark was "originated, devised, adopted and used" by said predecessors in 1867. To permit it would be to allow plaintiff to plead one title and recover upon another. Beck v. Ferrara, 19 Mo. 30; Kennedy v. Daniels, 20 Mo. 104; Waldhier v. Railway, 71 Mo. 519; Raming v. Railway, 157 Mo. 506; Utassy v. Giedinghagen, 132 Mo. 60; Sicard v. Davis, 6 Pet. (U. S.) 124; Robbins v. Harris, 96 N. C. 560; Marshall v. Olds, 86 Ala. 296. (5) The plaintiff can have no technical trade-mark in the words "Old Crow," the words having been used on similar goods by other parties previous to their adoption by Gaines, Berry & Co. Mfg. Co. v. Mfg. Co., 58 Mo. App. 411; O'Rourke v. Soap Co., 26 Fed. 576; Hoyt v. Lovett Co., 71 Fed. 173, 17 C. C. A. 652; Mill Co. v. Alcorn, 150 U. S. 460; Corwin v. Daley, 7 Bos. (N. Y.) 222; Wolfe v. Goulard, 18 How. Pr. 64; Stachellberg et al. v. Ponce, 128 U. S. 686; Canal Co. v. Clark, 13 Wall. 322; Coates v. Thread Co., 149 U. S. 569. (6) In the absence of a technical trade-mark, the plaintiff can not recover, as there is a total failure of proof, under all the authorities, of unfair or unlawful competition. Carb. Co. v. Eclipse Co., 58 Mo. App. 411; Goodyear v. Goodyear, 128 U. S. 598; Mfg. Co. v. Mfg. Co., 138 U. S. 537; Centaur Co. v. Marshall, 92 Fed. 605; Watch Co. v. Watch Co., 179 U. S. 665, 45 Law Ed. 365; Hopkins on Unfair Trade, pp. 32, 212. (7) The laches of the plaintiff and its predecessors should prevent their recovery in this action. Bliss v. Pritchard, 67 Mo. 181; Landrum v. Bank, 63 Mo. 48; Burgess v. Railroad, 99 Mo. 496; McLaughlin v. Railway, 21 Fed. 574; Smith v. Adams, 6 Paige (N. Y.) 435; Amoskeag v. Garner, 55 Barb. 151; Coates v. Thread Co., 149 U. S. 562; Hathaway v. Noble, 55 N. H. 513; Brown on Trade-marks, sec. 497. (8) The

court erred in taxing all the costs, including the costs under the original petition, against the defendant. Tower v. Pauley, 67 Mo. App. 632; Street v. Bushnell, 24 Mo. 328; Crawford v. Spencer, 36 Mo. App. 78; Assn. v. Fehlig, 72 Mo. App. 473; Supreme Council v. Midelet, 85 Mo. App. 283; Schumacher v. Mehlberg, 96 Mo. App. 598. (9) It was error to refuse to make a special finding of the facts and conclusions of law thereon in this case. The statute applies to both legal and equitable actions. R. S. 1899, sec. 695; Hamill v. Talbot, 72 Mo. App. 22; Blount v. Spratt, 113 Mo. 53; Cochran v. Thomas, 131 Mo. 258.

*Gage, Ladd & Small* for respondent.

(1) The plaintiff has a valid trade-mark, of which the distinguishing feature is the words "Old Crow," because its predecessors originated, devised and adopted them as such trade-mark, in the year 1867, and were the first persons to use the words as a trade-mark, and have since then continuously maintained such use. (2) Even if Oscar Pepper had originally devised, adopted and used the words "Old Crow" as a trade-mark or trade-name for whiskey of his manufacture, they had been abandoned by him, and Gaines, Berry & Company therefore had a right to adopt them in 1867, as their trade-mark, and thereby acquire a valid title thereto. Menendez v. Holt, 128 U. S. 514; McLean v. Fleming, 96 U. S. 254; O'Rourke v. Soap Co., 26 Fed. 578; Baking Powder Co. v. Raymond, 70 Fed. 376. (3) The imitation of a trade-mark which will, in law, constitute an infringement, need not be exact or complete. If it be only partial it will be enjoined by a court of equity. Filley v. Fassett, 44 Mo. 168; Tobacco Co. v. Tobacco Co., 104 Mo. 53; McCann v. Anthony, 21 Mo. App. 83; Pillsbury v. Flour Mill Co., 64 Fed. 847; Tobacco Co. v. Hynes, 20 Fed. 885; Fairbank Co. v. Luckel, etc., Co., 102 Fed. 331; Seixo v. Provenzende, L. R., 1 Ch.

App. 195.    (4)  It is no defense that Whyte's name is on the label complained of, and that Gaines & Company's is not.   Menendez v. Holt, 128 U. S. 514; Gillott v. Esterbrook, 47 Barb. 455; s. c., 48 N. Y. 374; Coats v. Holbrook, 2 Sandf. Ch. 586.    (5)  It was no fraud on the part of plaintiff to adopt and use the name "Old Crow."    (6)  The fact that the complainant's trademark has been used by others is no defense, unless it appears that it was with complainant's knowledge, consent and acquiescence.   Filley v. Fassett, 44 Mo. 172; Cuervo v. Henkell Co., 50 Fed. 471; Taylor v. Carpenter, 3 Story 458; Singer Co. v. Mfg. Co., 163 U. S. 202. (7)  Even where consent by the owner to the use of his trade-mark may be inferred from his knowledge and silence, it lasts no longer than the silence from which it springs.   It is no more than a revocable license.   Menendez v. Holt, 128 U. S. 523; Mfg. Co. v. Spear, 2 Sandf. 599.  (8) Even if there were not a technical trade-mark, the conduct of the defendant should be restrained on the ground that it constitutes unfair trade and competition.   State v. Bishop, 128 Mo. 381; Brewing Co. v. Brewing Co., 47 Mo. App. 19; McLean v. Fleming, 96 U. S. 254; Coats v. Thread Co., 149 U. S. 566; Carson v. Ury, 39 Fed. 779; Newman v. Alvord, 51 N. Y. 189. (9)  Fraud, upon which an injunction issues upon the ground of unfair trade and competition, is clearly shown in this case.   Mfg. Co. v. Mfg. Co., 138 U. S. 537; Canal Co. v. Clark, 13 Wall. 325; Newman v. Alvord, 51 N. Y. 189; Fish Co. v. Wooster, 28 Mo. App. 419; Flour Mills Co. v. Eagle, 86 Fed. 608; Envelope Co. v. Walton, 82 Fed. 469; Brewing Assn. v. Piza, 24 Fed. 149; Mfg. Co. v. Mfg. Co., 163 U. S. 169.    (10)  This action is not barred by any statute of limitations.    (11)  There is no prescription in the case.   13 Ency. Plead. and Prac., 290; Shields v. Shiff, 124 U. S. 359; Montgomery v. Locke, 72 Cal. 75; Bunten v. Railroad, 50 Mo. App. 425; 19 Am. and Eng. Ency. of Law, p. 23, title "Prescription;" Mfg. Co. v. Spear, 2 Sandf. 604; Taylor v. Car-

penter, 3 Story 463; Snowden v. Noah, 1 Hopkins Ch. 352; Matsall v. Flanagan, 2 Abb. Prac. (N. S.) 459. (12) Failure of the trial court to make special findings, is not reversible error.

SMITH, P. J.—The plaintiff and defendant are both business corporations, the former organized under the statute of this State and the latter under that of the State of Kentucky. The plaintiff in its petition alleged, (1), that it was and is the owner of a special trade-mark for "Old Crow" whiskey, which defendant had infringed and was infringing; and (2), that by the use of the words "Old Crow" upon bottles containing whiskey other than the genuine "Old Crow" whiskey produced by plaintiff which it offered to the trade, defendant thereby carried on such unfair trade and competition as entitled plaintiff to the injunctive process of the court. The defendant's answer, in addition to a general denial, interposed the defenses of laches and the statute of limitation. There was a trial and decree for plaintiff and defendant appealed.

The first question raised by the appeal is whether or not the plaintiff's action is barred by the statute of limitations. Section 4272, Revised Statutes, provides that the following actions shall be brought within ten years: (1), an action upon any writing, whether sealed or unsealed, for the payment of money or property; (2), actions brought on any covenant of warranty contained in any deed of conveyance of land shall be brought within ten years next after there shall have been a final decision against the title of the covenantor in such deed, and actions on any covenant of seizin contained in any such deed shall be brought within ten years after the cause of such action shall accrue; and (3), actions for relief, not herein otherwise provided for. And the next succeeding section—4273—provides that the following actions shall be brought within five years: "....; fourth, an action for taking, detaining or

injuring any goods or chattels, including actions for the recovery of specific personal property, or for any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated; fifth, an action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud.''

The defendant by its answer pleaded that the words, ''Old Crow,'' and the symbol of a crow have been used by it and its predecessors on labels affixed to whiskey bottled and sold by it for twenty-three years last past without any objection from plaintiff or its predecessors; that it and its predecessors have at all times claimed the right to use said words and symbol upon their labels and that plaintiff knew, or might by the exercise of ordinary diligence have known of the use of said label and symbol by it and its predecessors.

This is a suit in equity for injunctive process to restrain the defendant's further infringement of the trademark referred to, and to restrain it from carrying on unfair trade and unfair competition, and we are obliged to determine, first, whether the statutory provisions, or any of them, just quoted, are applicable in cases of this kind, and, if so, second, whether or not the evidence adduced is sufficient to support the defendant's plea of them. The terms employed in the third clause of said section 4272 are quite comprehensive in their scope. In Rogers v. Brown, 61 Mo. 192, it was declared: ''In this State, as has been before stated, the statute of limitations applied to all civil actions, and our courts have no more authority to engraft upon the statute exceptions extending the time for bringing suit in cases which were formerly cognizable only in equity, than they have to interpolate exceptions similarly affecting actions at law.'' But in the much later case of Boyce v.

Railway, 168 Mo. l. c. 591, it was said that the statute of limitations does not directly apply to actions in which easements or other incorporeal hereditaments are involved. And in Reed v. Painter, 145 Mo. 341, it was further said that this statute does not apply in cases of direct trusts. So that, it will not do to say that the ten year statute of limitations is applicable in all civil actions not otherwise provided for in article 2, chapter 48, Revised Statutes. We have been referred to no case in this State where the statute has been pleaded to an action to enjoin infringement of a trade-mark. The only case where the subject has been referred to is that of Sanders v. Jacobs, 20 Mo. App. 99, which was an action to enjoin the use of a trade name, and where Judge THOMPSON in the course of the opinion of the court said: "The statute of limitations does not in terms apply to a case of this kind, nor, in applying the doctrine of laches, is the analogy of the statute of limitations necessary to afford the rule of decision."

Wolf v. Barnett, 24 La. Ann. 97, was a suit to enjoin the defendants from using a certain name on their preparations. The Louisiana statute of prescription was pleaded as a defense. In the course of the court's opinion in the case it was said: "It is urged by defendants that the plaintiff's claim is prescribed by the prescription of ten years, during which time, prior to the suit, they claim that they have been engaged in the business complained of. The prescription of one year, which is also pleaded, cuts off plaintiff from any claim for damages for any period longer than twelve months prior to citation (Rev. C. C. 3536), but we do not think there is any force in the plea of ten years, or in the further point 'that the defendants have acquired as to all the world, by uninterrupted possession for ten years, a full and complete title to the trade-mark.'" While some of the cases cited in the first paragraph of defendant's brief, notably that of Blackwell v. McElwee, 100 N. C. 150; Northcutt v. Turney, 101 Ky. 314; Fullwood

v. Fullwood, L. R., 9 Chy. Div. 176, lend support to the contention that the statute of limitations is applicable in a case like the present, but in none of them can it be said that this was a point upon which the decision depended; so that what is said in them touching this point can not be regarded as more than mere *dicta*.

McLean v. Fleming, 96 U. S. 245, was a suit for an injunction to restrain the defendant from infringing a specific trade-mark, which was carried by appeal from the circuit court of the Eastern district of Missouri to the Supreme Court of the United States. It was alleged and proved that the labels had been used by the defendant for twenty years and that the complainant knew the fact during the entire period. In the opinion delivered in the case in the latter court it was said: "Equity courts will not in general refuse an injunction on account of delay in seeking relief where the proof of infringement is clear, even though the delay may be such as to preclude the party from any right to an account for profits. . . . . . . . It sufficiently appears that the respondent has been engaged in preparing and selling his pills for more than forty years; that during that period, or more than half of it, he has been using labels and trade-marks corresponding more or less to those used by the predecessors of the complainant, *some of whom during all or most of that time, knew* what the labels and trade-marks were which were used by the respondent, the evidence to that effect being full and decisive. . . . Evidence of a decisive character is exhibited in the record to show that the *complainant or his predecessor knew throughout* what description of labels and trade-marks the respondent was using; and it does not appear that any objection was ever made, except as heretofore stated and explained. Once, the respondent was requested to insert the initials of his Christian name before his surname, in the label; and it appears that he immediately complied with the request. . . . Cases frequently

arise where a court of equity will refuse the prayer of the complainant for an account of gains and profits, on the ground of delay in asserting his rights, even when the facts proved render it proper to grant an injunction to prevent future infringement. Relief of the kind is constantly refused, even where the right of the party to an injunction is acknowledged because of an infringement, as in case of acquiescence or want of fraudulent intent. Acquiescence of long standing is proved in this case, and inexcusable laches in seeking redress which show beyond all doubt that the complainant was not entitled to an account nor to a decree for gains or profits; but infringements have been proven, *showing that the injunction was properly* ordered, he is entitled to the costs of the circuit court. . . . Decree as to the injunction and costs in the circuit court will be affirmed, but it will be reversed as to the decree for an account.''

In the later case of Menendez v. Holt, 128 U. S. 523, it is said: ''Counsel in conclusion earnestly contends that whatever rights appellees may have had were lost by laches; and the desire is intimated that we should reconsider McLean v. Fleming, 96 U. S. 245, so far as it was therein stated that even though a complainant were guilty of such delay in seeking relief upon infringement as to preclude him from obtaining an account of gains and profits, yet, if he were otherwise so entitled, *an injunction against future infringement might properly be awarded. We see no reason to modify this general proposition,* and we do not find in the facts as disclosed by the record before us anything to justify us in treating this case as an exception.''

When the judgment was rendered in McLean v. Fleming by the circuit court of the United States for the Eastern district of Missouri, the statute of limitations was the same as now.

Cedar Lake Hotel Co. v. Cedar Lake Hydraulic Co., 79 Wis. 297, was where the plaintiff owned a hotel on

the borders of a lake in Wisconsin, which was a pleasure resort. The defendant, eighteen years before, had constructed at the outlet of the lake certain works by which the water of the lake could be raised and lowered. This had been going on ever since the construction of the works. The conduct of the defendant must have been open and apparent to the view of everyone. The result was that whenever the water was lowered below low-water mark, it left the shore line of the lake contiguous to plaintiff's premises far out and away from its natural shore line, and left a wide margin of bog, mud and swamp. The plaintiff frequently lost the entire advantage of being contiguous to the lake. The action was brought to recover damages and for an injunction to restrain the further lowering of the waters of the lake. One defense was the statute of limitations. The court held that it being a case of continuing and repeated injury, "the action is not liable to the bar of any statute."

While the exclusive right to use a trade-mark is property, there is no abstract property in a trade-mark. It is property only when appropriated and used to indicate the origin or ownership of a commercial article. The trade-mark has no separate, abstract existence but is appurtenant to the goods designated. It does not partake of the character and nature of a patent or copyright. Paul on Trade-marks, sec. 18, and cases there cited. The reasoning of the defendant urged in support of its contention respecting the availability of the statute of limitations as a defense is, we think, more specious than sound. We can not bring our minds to the conclusion that the statute is applicable in cases of this kind.

The defense of the plea of the statute of limitations is interposed by defendant's answer to the second ground for relief alleged in plaintiff's petition, namely, that of unfair competition; and as the underlying principles in cases involving trade-marks and unfair competition are the same (Paul on Trade-marks, sec. 23),

no reason is seen why the statute is not as inapplicable to the second ground upon which relief is sought as to the first.

But suppose we are in error in this and that the statute of limitations is available as a defense to plaintiff's action, then is the defendant's plea of it supported by the evidence? It is insisted by defendant that because its vice president testified that labels had been used by it and its predecessors for twenty years or more, covering bottles containing whiskey that was not genuine "Old Crow," that the right to use them had become vested in it in the same manner that the title to real and personal property may become vested in the occupant or holder by adverse possession of it maintained for the time prescribed by the statute of limitations.

The possession of real or personal property which may ripen into a title must be open, notorious, continuous, adverse and under a claim of ownership. "The term 'adverse possession' designates a possession in opposition to the true title and real owner, and it implies that it commenced in wrong—by ouster or disseizin—and is maintained against right. The law, on the contrary, *presumes that every possession is rightful and consistent with,* not in opposition or 'adverse' to, title and ownership. A party, therefore, who relies upon 'adverse possession' in order to rebut this presumption of possession consistent with the title of the real owner, must prove his possession to be 'adverse' to the title set up; that is, he *must show the actual knowledge of the real owner* that he claims in opposition to, and defiance of his title, or he must show such an occupancy and user, so open and notorious and *inconsistent with* as well as injurious to the rights of the true owner, that the law will authorize from such facts the presumption of such knowledge by the true owner. It is *not* the *mere occupancy or possession* which must be known to the true owner to prejudice his rights; *but*

*its 'adverse' character.''* Hunnewell v. Burchett, 152 Mo. 611, 614.

The evidence disclosed that every one handling and selling the product of the plaintiff's distillery was authorized to use the label containing the words, ''Old Crow.'' This was encouraged rather than condemned. The use of these labels by defendant was no infringement of the plaintiff's right unless placed on bottles containing whiskey not the output of the plaintiff's distillery. When defendant used such labels on bottles containing any other whiskey, it was an invasion of the plaintiff's rights. It is true, the vice president of defendant testified, as already stated, that it had been in the habit of placing the ''Old Crow'' label on ''Cabinet'' and perhaps other whiskeys, but this was not shown to have been known to anyone else, not even to the defendant's employees. This label was not shown to have been so used with the actual knowledge of the plaintiff; or that defendant openly and notoriously claimed the right to use the label on whiskey that was not ''Old Crow,'' or that such claim of right was brought home to plaintiff. On the contrary, the evidence shows no more than that the only claim of right which defendant openly made was that to place the labels on the product of the plaintiff's distillery. Most manifestly, if the use of this label by the defendant on any kind of whiskey it chooses to place it is to ripen by the lapse of time into a right as the possession of real property operates to vest title, then, like such possession, the use of such label in this manner ought to be open and not concealed as seems most clearly to have been the case here.

In Boyce v. Railroad, ante, it was said: ''If defendant's possession of the land had been open, notorious and under claim of right thereto for ten years prior to the time suit was brought, plaintiff's action was barred whether he knew the facts or not. Scruggs v. Scruggs, 43 Mo. 142. Actual, continued, visible, notorious and

hostile possession is tantamount to a claim of ownership.''

The principles of these cases apply as well where only one easement is claimed as where title to land itself is in controversy. Some easements are of such nature and character as they may be enjoyed at the same time by several persons and the owner may also use the surface of the land. In such case, the nature of the use does not necessarily disclose the identity of the person using the land, nor does it disclose or mean that an exclusive use of the easement is claimed. And so in the present case, as the defendant was authorized to use the "Old Crow" labels on bottles containing the product of plaintiff's distillery, the plaintiff had the right to indulge the presumption that it limited the use of them in that way and in no other unless actual knowledge of such secret, improper use was brought home to plaintiff, and of which there was no evidence.

The evidence does not disclose that plaintiff or anyone else, until just before this suit was brought, had any knowledge that the defendant was clandestinely placing the "Old Crow" labels on whiskeys other than the product of the former's distillery; and so it results that in any view that the defense of the statute of limitations pleaded may be held, it was not sustained by the evidence and was for that reason, if for no other, no bar to the plaintiff's action.

## II.

The defendant further contends that the plaintiff can not recover on the theory of an abandonment of the trade-mark by the originators thereof and the subsequent adoption by plaintiff and its predecessors for the reason that no such allegations are contained in its petition, for to permit it would be to allow plaintiff to plead one title and recover upon another. It is true that the petition states a great many historical facts relating to

the origin and production of a whiskey well known to the trade as "Old Crow whiskey;" yet, these facts are not essential to the plaintiff's case—they are not constitutive of it and may be regarded as no more than mere surplusage. The petition not only alleges that the plaintiff was the owner and entitled to the exclusive use of the trade-mark, but that the defendant infringed it to the great detriment of the plaintiff. This was sufficient. Burke v. Societe, 14 App. Div. 173; Story's Eq. Plead. (10 Ed.), secs. 27, 28.

If plaintiff's evidence shows, as we think it does, that it was the owner of the trade-mark; that it had the exclusive title, that was sufficient, for the plaintiff was not required to prove that it acquired its title in all or in the several ways alleged. · The acquisition of it in either one of these ways, if proved, would be sufficient to meet every requirement of the law. A plaintiff is not required to prove all the facts alleged in his petition, but only enough of them to constitute a cause of action. Morrow v. Surber, 97 Mo. 155; Knox County v. Goggin, 105 Mo. 182; Hartpence v. Rogers, 143 Mo. 623; Stern v. St. Louis, 161 Mo. 146.

### III.

The defendant further contends that plaintiff can have no technical trade-mark in the words "Old Crow" because these words were used on similar goods by others prior to their adoption by Gaines, Berry & Company.

It is disclosed by the evidence that one James Crow, a distiller, had a secret formula for the making of whiskey. He was employed in 1833 by Oscar Pepper, the owner and operator of a distillery, for whom he made whiskey according to his formula until 1855. He died a year later. The whiskey made by him was of excellent quality. One Mitchell, who had worked with Crow, and had learned his formula, took Crow's place and con-

tinued to make whiskey at the Pepper distillery until the latter's death in 1865. After the death of Pepper, one Edwards leased the distillery and carried it on for about a year. In February, 1867, Gaines, Berry & Company leased it and carried it on until July, 1869. In the last-named year this copartnership built and moved into a new distillery located about three miles away from the Oscar Pepper distillery. From 1869 to 1871 the latter was not operated. In 1870 the copartnership was succeeded by that of W. A. Gaines & Company, which latter in 1887 was succeeded by the plaintiff. When Gaines, Berry & Company leased the Pepper distillery they employed Mitchell, already referred to as Crow's pupil, as their distiller, and he remained in their employment and that of their immediate successor, W. A. Gaines & Company, until 1872, and during all that time the whiskey output of the distillery of these firms was made according to the Crow formula. One Van Johnson, who worked with Mitchell for several years and who had learned the Crow formula, succeeded Mitchell as distiller in the employment of W. A. Gaines & Company, and used the Crow formula in the production of whiskey by the latter and its successor, the plaintiff, so that the Crow formula has been continuously used in the production of whiskey by the several parties named for nearly three-quarters of a century. It is true, that after the expiration of the second lease of the Pepper distillery in 1873, James E. Pepper, a son of Oscar Pepper, and E. H. Taylor operated it for a year or so and then tore it down, erecting a new distillery in its place. This last-named copartnership was succeeded in the ownership of the new distillery by Labrot and Graham "who have operated it ever since its acquisition by them." It does not appear that after Gaines, Berry & Company left the old Oscar Pepper distillery that anyone operating it or the new one erected in its place ever used the Crow process in the making of whiskey, or that they, or any of them, ever applied the words "Old

Crow" to any whiskey of their production. It does not appear that Oscar Pepper ever used the words "Old Crow" to designate the whiskey produced at his distillery after James Crow left his employment. From 1855 to 1865 he operated his distillery and designated its production as "Old Oscar Pepper" whiskey.

Edwards, who next operated the Oscar Pepper distillery, as previously stated, designated the whiskey produced by him "Edwards' Whiskey" and did not apply the words "Old Crow" to it. From 1855 to 1867 when Gaines, Berry & Company took charge of the Old Oscar Pepper distillery no one used the words "Old Crow" or "Crow" to designate his whiskey. They began in the last-named year (1867) to apply the words "Old Crow" to whiskey of their production and they and their successors down to the present time have continued to do so. It does not clearly appear that Oscar Pepper used the words "Old Crow" or "Crow" to designate the whiskey produced by him while Crow was in his employment, but if he did it is certain that he discontinued their use after Crow left his service. It appears that prior to 1867 there were no brands or marks placed by the distillers of Kentucky on barrels containing whiskey by them severally produced. Before that time whiskey was only known by the name of the distiller or the owner of it.

There is evidence tending to show that while Crow was in the employment of Oscar Pepper that the latter in introducing his whiskey to the trade referred to it as "Crow whiskey." This he no doubt did because he knew of the reputation of Crow as a distiller and that such a reference would facilitate the sale of it. Certainly, Oscar Pepper did not intend to adopt it as designation, trade-name or trade-mark for the whiskey produced by him at any time, or, if so, certainly not after Crow's death in 1856, for during the next ten years he continued to distill whiskey and did not designate it as "Old Crow" or "Crow" whiskey, but named it "Old

Oscar Pepper Whiskey." His conduct, it seems to us, effectually disposes of the contention that anyone prior to 1867 devised, originated or used the words, "Old Crow," or "Crow," as a trade-mark or name for whiskey.

If Pepper ever used the words, "Old Crow," or "Crow," to designate whiskey of his production he had abandoned them and their use twelve years before Gaines, Berry & Company went into the possession of the Oscar Pepper distillery; and no one else in the meantime appropriated or adopted these designating words in their application to whiskey. Neither the heirs of Oscar Pepper nor anyone succeeding to the ownership of his distillery have disputed the right of Gaines, Berry & Company and their successors to use these designating words as a trade-mark for their whiskey.

A trade-mark is a mere notice, arbitrary sign or mark put on an artificial product whereby any person interested in the information may be assured as to the origin of the product. Such a mark is a means for rendering more pronounced, distinctive and valuable that species of property known as the "good will" of a business. A manufacturer, for instance, may use a trademark, a word or words arbitrarily selected. In doing so he acquires no property in the word or words as such. His right attaches to the peculiar and added function of such word or words in identification of his product by reason of his use. In so adapting the word or words he takes nothing from, and in ceasing to use he returns nothing to any store of common property. His right to the mark will ordinarily pass as incidental to the good will of his business to his successor, and from the necessity of the case such right becomes extinct when that business becomes extinct. And when the use of a trademark is abandoned or given up with no intent to resume it, this amounts to an offer of it to the public which anyone may accept. And when one abandons a trade-mark and it is subsequently appropriated by another, the lat-

ter acquires a valid title against him who first originated it.

The authorities are to the effect that one may adopt as a valid trade-mark words or symbols which have been originated or devised by another and afterwards abandoned by such other. Paul on Trade-marks, secs. 101, 105; Blackwell v. Dibrell, 3 Hughes 151 (Fed. Cas. No. 1475); Raymond v. Royal Baking Powder Co., 85 Fed. 231; Royal Baking Powder Co. v. Raymond, 70 Fed. 376; O'Rourke v. Central City Soap Co., 26 Fed. 576; Menendez v. Holt, 128 U. S. 514; Burt v. Taylor, 178 Mass. 493. In the light of the authorities just cited we must conclude that if Oscar Pepper ever did use the words "Old Crow" or "Crow" as a trade-mark to designate any whiskey produced at his distillery that there was such a complete disuse of it as to amount to an abandonment and to render it capable of appropriation by Gaines, Berry & Company and their successors. We may add that, we do not think the evidence tends to prove there was such prior use of the words "Old Crow" or "Crow" at the time of the adoption of them in 1867 by Gaines, Berry & Company for their trademark as to render them *publici juris* and consequently Manufacturing Co. v. Manufacturing Co., 58 Mo. App. 411, and the other like cases cited by defendant, are without application.

## IV.

It is the defendant's further contention that in consequence of the laches of the plaintiff and its predecessors the relief sought by the action should have been denied. In addition to what has already been said in a previous paragraph touching the doctrine of laches, we may observe that in Badger v. Badger, 2 Wall. 94, it was declared that this is a defense peculiar to courts of equity founded on lapse of time and the staleness of the claim when no statute of limitations governs the law. Numerous cases are cited in the defendant's brief illus-

trating the application of the doctrine of laches in a great variety of instances.

This doctrine in its application to trade-marks has been stated by a very accurate law writer—Paul on Trade-marks, sec. 106—in this way:

"A trade-mark may be lost completely by laches, or the proprietor may lose simply the right to an account of gains or profits. Where the person who infringes a trade-mark does so with a show of right and justification, inexcusable laches on the part of a proprietor will work a forfeiture of the trade-mark, and disentitle him to any relief whatever; but where the infringer has appropriated the trade-mark without any show of justification, and in fraud of the proprietor's rights, laches on the part of the proprietor will usually disentitle him to an account of gains and profits, *but will not defeat the remedy by injunction.*" And the same writer further states—section 107—that it is clear from what is decided in Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, that where an infringer has proceeded in good faith and with a show of justification of right laches on the part of the proprietor may result in a complete loss of trade-mark right.

In McIntire v. Pryor, 173 U. S. 38, it was in effect held that the principle of laches has but an imperfect application, and delay even greater than that permitted by the statute of limitations is not fatal to a plaintiff's claim. The cases analyzed in that opinion make it plain that where actual fraud is shown the court will look with much indulgence upon the circumstances tending to excuse the plaintiff from a prompt assertion of his rights. And in a case of active and continuing fraud it should be satisfied with no evidence of laches that does not amount to proof of assent or acquiescence.

In a Florida case—El Modello Cigar Mfg. Co. v. Gato, 25 Fla. 886, it is said that "the rule in England, in trade-mark cases, is more stringent than in this country, and a lack of diligence there in suing deprives com-

plainant in equity of the right to an injunction or on account. But our courts are more liberal in this respect. A long lapse of time will not deprive the owner of a trade-mark of an injunction against an infringer, but a reasonable diligence is required of a complainant in asserting his rights if he would hold a wrongdoer to account for profits and damages. This rule, however, applies only to those cases where there has been an *acquiescence after a knowledge of the infringement is brought home to the complainant.* . . . Nor will the acquiescence of any person in the wrongful use of his name estop him from asserting his rights in equity unless he *has notice, during such acquiescence, of the facts rendering the use of his name wrongful.* . . . And the laches of the complaint will not avail as a defense in a proceeding to restrain the use of a trade-name, when the defendant adopted the name with a fraudulent intent." And to the same effect are Sanders v. Jacob, 20 Mo. App. 96 and Plant Seed Co. v. Michel Plant & Seed Co., 23 Mo. App. 579.

In Northcutt v. Turney, 101 Ky. 314, it was held that as plaintiffs' had acquired by long use, sanctioned by the decisions of the courts, the right to use the words "Blue Lick" as a trade-mark for mineral water, that the use and attempted appropriation of the same trade-mark by defendant in advertising and selling water from an artesian well was illegal and fraudulent, and that no presumption of acquiescence in the wrongful appropriation of the trade-mark could arise so as to estop plaintiffs from exercising their right to restrain its use. And the cases generally hold the rule to be that where one party infringes upon the trade-mark of another there is no fixed time in which he must bring his suit to save his rights. There must be such neglect on the part of the complainant as shows an intention to abandon his trade-mark before he can be estopped to have injunctive process. Williams v. Adams, 8 Biss. 452; Prince's Me-

tallic Paint Co. v. Prince Mfg. Co., 6 C. C. A. 647;
White v. Miller, 50 Fed. 277.

Perhaps the best expression of the rule is that to be
found in Menendez v. Holt, 128 U. S. 514, which is to
the effect: "Mere delay or acquiescence can not defeat
the remedy by injunction in support of the legal right,
unless it has been continued so long, and under such cir-
cumstances, as to defeat the right itself. . . . Where
consent by the owner to the use of his trade-mark by
another is to be inferred from his knowledge and silence
merely, '*it lasts no longer than the silence from which
it springs. It is, in reality, no more than a revocable
license.*' . . . So far as the act complained of is
completed, acquiescence may defeat the remedy on the
principle applicable when action is taken on the strength
of encouragement to do it; but so far as the act is in
progress, and lies in the future, the right to the inter-
vention of equity is not generally lost by previous delay,
in respect to which the elements of an estoppel could
rarely arise."

It appears from the evidence that the plaintiff's
annual production of whiskey is very large and that
only a small part of it is bottled by it at its distillery.
The plaintiff makes two labels for "Old Crow" whiskey
which it furnishes to the purchasers of its product, but
most of such purchasers prefer to select their own label
so as to become identified with it. In some instances
such purchasers and dealers in whiskey produced by
plaintiff use what is commonly known as "stock labels"
which can be purchased almost anywhere. The plaintiff
has for many years recognized the right of the owner of
its product to bottle it and place upon such bottles the
trade-words "Old Crow," with such accessories as may
suit the individual fancy of the bottler. This privilege
has always been accorded to every dealer in plaintiff's
whiskeys and is not now open to question. The fact
that a great variety of "Old Crow" stock labels are in
general use of the genuine production of the plaintiff's

distillery renders it difficult for plaintiff to know of the use of them on whiskeys not of plaintiff's production.

It is disclosed by the evidence that while these "Old Crow" stock labels have been, in many instances, placed on bottles containing almost every kind of cheap and inferior whiskeys, yet it does not appear that such improper use was brought home to the knowledge of plaintiff. Defendant and its predecessor had the right in common with every other dealer in "Old Crow" whiskey to place on the bottles containing it, the "Old Crow" labels devised and used by him, but neither of them, had the right to use such labels on bottles containing "Old Cabinet" or any other whiskey not the production of plaintiff's distillery. The evidence discloses that the defendant and its predecessors for a period of twenty-five years had been using these "Old Crow" labels on bottles containing whiskeys other than that produced by plaintiff. The plaintiff and the public had the right to presume that the bottles on which defendant had placed the "Old Crow" labels contained whiskey of plaintiff's production. There was no substantial evidence that plaintiff knew or by the exercise of ordinary diligence could have known of the fraudulent use made by the defendant of the "Old Crow" labels, and therefore there can be no acquiescence or assent to such improper use implied. It is certain that the discovery by plaintiff that the defendant was using "Old Crow" labels on whiskey *not the production* of its distillery was not made until a short time before this suit was begun, and then only by purchasing two bottles of defendant's whiskey labeled "Old Crow," and testing it.

For a period of nearly forty years the plaintiff's "Old Crow" whiskey has had a reputation for excellence in quality as wide as the continent, and this, it must be presumed, was known to defendant. It knew the popularity of "Old Crow" whiskey distilled by plaintiff. Biles' Whiskey Price List—a semi-monthly

publication of market quotations of whiskey, and recognized by the trade as a standard authority—was introduced in evidence, and which showed in a list of prices of about 200 brands of Bourbon whiskey, "Old Crow" stood at the head. In view of these facts it is quite manifest that the use of the "Old Crow" labels by defendant on bottles containing "Old Cabinet" and other whiskeys not of plaintiff's production, was a fraud, both on the plaintiff and the public. Filley v. Fassett, 44 Mo. 168; Liggett & Myers Tobacco Co. v. Reid Tobacco Co., 104 Mo. 53; Pillsbury v. Pillsbury, 64 Fed. 841, and cases cited in plaintiff's brief.

In looking at the facts disclosed by the evidence in the light of the principles announced in the authorities to which we have referred, and we do not think the plaintiff guilty of any such laches or neglect as to estop it from asserting its right to the injunctive process of the court. It is obvious that the circumstances under which the defendant used the "Old Crow" labels on bottles containing whiskeys other than that produced by plaintiff was such an active and continuing fraud as rendered the defense of laches unavailable to it.

## V.

The defendant further insists that the second ground alleged in the petition for the interference of the court by its writ of injunction, that is to say, that the defendant was engaged in unfair trade and competition, is not sustained by the proof. It is unnecessary to entitle plaintiff to an injunction that a specific trademark be infringed. It is sufficient if the court is satisfied that there was an intent on the part of defendant to palm off the "Old Cabinet" whiskey contained in bottles labeled *"Old Crow Whiskey. This whiskey is bottled by us and we are responsible for its purity and Fine Quality. E. Whyte & Co."* as the "Old Crow" whiskey produced by the plaintiff. As said in Goodyear v. Goodyear, 128 U. S. 598, "relief in such cases is

granted only where the defendant by his mark, signs, labels or in other ways represents to the public that the goods sold by him are those manufactured or produced by plaintiff, thus palming off his goods for those of a different manufacturer to the injury of the plaintiff." Fraud is presumed from the wrongful use of a trade-mark; it must be proven directly or by inference in all cases of unfair competition which do not involve a technical trade-mark. Hopkins on Unfair Trade, 22. In In Coats v. Thread Co., 149 U. S. 566, it was said that, "irrespective of the technical question of trade-mark, defendants have no right to dress their goods up in such a manner as to deceive an intending purchaser and induce him to believe he is buying those of the plaintiffs. Rival manufacturers may lawfully compete for the patronage of the public in the quality and price of their goods, in the beauty and tastefulness of their enclosing packages, in the extent of their advertisements, and in the employment of agents, but they have *no right by imitative devices* to beguile the public into buying their wares under the impression they are buying those of their rivals. And where, "a name was not a trade-mark. Yet although not technically such under circumstances of fraudulent usurpation, the infringement of it would be restrained as would any other act of unlawful competition." Brewing Co. v. Brewing Co., 47 Mo. App. 19.

The authorities cited in the briefs of both the plaintiff and the defendant concurrently announce the principles of the law of unfair trade and competition to be that, where one has established a business in the manufacture and production of goods and which has grown up under a given name or word or mark, whether such name, word or mark constitutes a special trade-name or mark, or not, no other may use such name, word or mark in such a way that others may be induced to believe that his goods are the product of the manufacturer who gave to it the name, word or mark.

There can be but one conclusion to be deduced from the evidence, and that is that the defendant placed the imitative label, "Old Crow" whiskey, on bottles containing "Old Cabinet" whiskey — an inferior and cheap whiskey—for the purpose of beguiling the public into buying such inferior and cheap whiskey under the impression that it was buying the "Old Crow" whiskey produced by plaintiff. This was such an injury to plaintiff and fraud on the public, as called for the interference of a court of equity by injunction to put a stop to it.

## VI.

No good reason has been suggested by the defendant for disturbing the judgment of the court below in respect to the costs.

## VII.

The defendant's final contention is, that the trial court erred in its refusal to make special finding of the facts and conclusions of law thereon. The statute (section 695) doubtless applies to both legal and equitable actions, but while this is so, we do not think the failure to make a special finding in an action of the latter kind constitutes a reversible error, because the supervisory courts are authorized on appeal to try and determine such actions upon the pleadings and evidence *de novo*. The findings of the trial court, if any, may be entirely disregarded by the former tribunal and such findings and decree entered therein as seems to it to be meet and proper. The Legislature did not, by the enactment of the statute already referred to, intend to abrogate the well and long-established practice of the appellate courts in supervising the findings of trial courts in equity cases, or to deprive the former of the jurisdiction to determine for themselves the correctness of the findings of the latter. Blount v. Spratt, 113 Mo. 48; McElroy v.

Maxwell, 101 Mo. 294; Benne v. Schnecko, 100 Mo. 250. If the supervisory courts are not bound by the findings of the trial courts, or their conclusions of law in equity cases, but may review the whole evidence and determine for themselves what the findings of fact and conclusions of law should be, it is difficult to see how a party could be prejudiced by the failure of the trial court to make special findings of fact in such cases.

The failure, therefore, of the court in the present case to make special finding of facts was not such an error as requires a reversal of the decree; and especially so since it was, as we think, clearly for the right party and the only one that could have been given in the cause.

Accordingly, our conclusion is that the decree should be affirmed. All concur.