Luxor Cab Manufacturing Corporation, Plaintiff, *v.* Leading Cab Co., Inc., and Others, Defendants.

Supreme Court, New York County, October 13, 1925.

Trade-marks and trade names — unfair competition — application for temporary injunction restraining defendants from selling and operating in city of New York taxicabs having color combination and design identical with that of plaintiff — use of certain color combination as distinguishing mark for goods may be protected against infringement by competitor dealing in same class of merchandise — plaintiff entitled to use of combination of colors used on its taxicabs though it did not originate them, where make-up had been abandoned by prior users — fact that others make use of plaintiff's design does not preclude plaintiff from relief — plaintiff not barred from injunctive relief by reason of laches — plaintiff not entitled to temporary injunction restraining use of shield design.

No one has a monopoly of a color, yet if one puts to use a certain color combination or a distinguishing mark for his goods, no other person may use it on the same class of merchandise with the avowed intention to mark his goods as those

of his competitor. Equity will always give heed to the interests of the public, even in the absence of the active element of deception by the imitator.

Accordingly, plaintiff, a company manufacturing, selling and operating taxicabs in the city of New York, is entitled to a temporary injunction restraining the defendants from selling and operating, throughout said city, taxicabs having a color combination and design identical with that of plaintiff's taxicabs, where said defendants admit the similarity which the color scheme of their taxicabs and the trade-mark design thereon bear to plaintiff's taxicabs, and where it is evident that defendants' motives by reason of the similarity of all their taxicabs as to size and form have been to encroach upon the good will of the plaintiff. Notwithstanding the fact that plaintiff was not the originator of the peculiar color combination in use on its taxicabs, it is entitled to injunctive relief to protect it against unfair competition at the hands of later users of the same make-up, particularly where the originators of the color scheme have abandoned its use.

Nor is plaintiff precluded from relief because others make use of the same design and color scheme, since the use by others does not afford the defendant an excuse for its unfair competition.

Plaintiff is not barred by reason of laches in the absence of evidence indicative thereof. Moreover, in applications for permanent injunctions for the infringement of trade-marks or unfair competition, laches is no defense.

However, plaintiff is not entitled to a temporary injunction restraining the use of the shield design upon defendants' taxicabs, where there will be no deception, though a similar shield should be used, if plaintiff's color scheme is not used on the body of the taxicabs.

MOTION by plaintiff for a temporary injunction.

*Joseph Sapinsky* [*Samuel R. Golding* of counsel], for the plaintiff.

*Mook & Blum,* for the defendants Leading Cab Co., Inc., and others.

*Van Vorst, Siegel & Smith,* appearing specially for Hupp Motor Car Corporation.

*Walter & Wolf,* for other individual defendants.

LEVY, J.:

The plaintiff has been engaged in the business of producing and distributing a certain type of taxicab known as the " Luxor " since October, 1923. This taxicab is marketed under a uniform contract requiring each of the cars to be subject to the inspection of the plaintiff, to be stored in plaintiff's garages, to be maintained according to certain standards, and to be operated by chauffeurs wearing the Luxor uniform, at the lowest city taxicab rates.

In order to familiarize the public with the service it is offering, the plaintiff has adopted a uniform design and color combination upon the cars, so that its patrons may, at a glance, recognize its product. This design is as follows: The upper part of the hood and the upper part of the tonneau is black, the lower part of the

hood and of the tonneau is cream-yellow, the two colors being separated by red striping which starts from the radiator and continues all the way around the body; the side splash pan between the running board and the body is black; the wheels, which are of the disk type, are cream-yellow, the rim or outer ring being black with a red stripe. Upon the side of the car is a shield emblem bearing diagonally from the lower left to the upper right-hand corner the name " Luxor " in white letters. The shield emblem was registered in the United States patent office on June 17, 1924. Many thousands of dollars have been expended by the plaintiff in familiarizing the public with its product, both in appearance and the character of the service.

The defendant Leading Cab Co., Inc., of which the defendants Bliss and Tepper are the leading spirits, has been selling taxicabs which are now operating on the streets of New York city, since early 1925, and which have a color combination and design identical with that of the plaintiff. This defendant obtains the chassis from the Van Alstyne Motor Corporation, the selling agent for the Hupp Motor Corporation, and the body from other sources. The bodies, hoods and disk wheels are painted practically in the identical color combinations and design as the plaintiff's product and a shield is placed upon the side of the car in the same relative position as that of the plaintiff, except that it bears the mark *Hupmobile* instead of *Luxor*, in a similar color of letters and in the same diagonal position. The other personal defendants named in the complaint are drivers of cars which are claimed to be imitations of the Luxor. The car thus marketed sells at a price of $500 lower than that sold by the plaintiff.

There is no serious denial by the defendants of the similarity which the color scheme of their taxicabs and the trade-mark shield bear to the plaintiff's; but in their answering affidavits attention is called to certain points of difference, such as the brass trimmings of the Luxor on the front of the radiator, as against the nickel trimmings of the Hupmobile, and the general Hupp lines of the latter as compared with the Packard lines of the Luxor. Upon the facts presented by it the plaintiff urges, however, that the general appearance of this defendant's taxicab is such as to mislead intended patrons of the plaintiff to hire a Hupmobile in the belief that they are using a Luxor. While it is true, as defendants contend, that as a general rule no one has a monopoly of a color, nevertheless where a merchant uses a certain color combination as a distinguishing mark for his goods, no other person may use it on the same class of merchandise with the design to market his goods as those of his competitor. (*Morgan's Sons Co.*

v. *Whittier-Coburn Co.*, 118 Fed. 657.)   This is not merely to protect the original trader, but to safeguard the consumer, and a court of equity will regard the interests of the latter, even in the absence of an active element of deception by the imitator.   (*Fairbank Co. v. Bell Mfg. Co.*, 77 Fed. 869.)

The authorities which have restrained an imitation of the dress or general get-up of goods deal largely with merchandise in packages.   But the necessity for such restraint is even more cogent in the case of taxicabs.   In applying the test of the likelihood of deception, regard must be had to the circumstances under which intending users hire such vehicles.   Considering the fact that they are largely engaged at night and when in motion, the opportunities for confusion are greater than in the case of packages, which the patron is able to examine more or less at leisure.   In view of the similarity of all taxicabs as to size and form, except for differences which may only be gathered upon a deliberate inspection, the color scheme is the persuasive mark which arrests the attention of the eye to the moving vehicle.   This elementary psychological principle makers of · taxicabs have sought to utilize by dressing their conveyances in various colored raiments.   The possibilities of such combinations which will attract notice are so numerous that there is no reason for a manufacturer to adopt an existing combination established and made known by another.   When he does so the conclusion is inevitable that his motives unquestionably have been to poach upon the good will of his competitor.   The defendants point, however, to certain features which distinguish their car from the plaintiff's, to which reference was previously made.   A careful observer watching the numerous Luxor and Hupmobile cabs on the street will, after close observation and scrutiny, finally distinguish one from the other without reading the name on the shield; but it is perfectly evident that the unsuspecting consumer has no such opportunities of making distinctions.   Even if he should think of reading the name on the shield, his ability to see the small letters in the uncertain light and with the car in motion is very doubtful.   Nothing, therefore, more aptly illustrates the wisdom of the rule that similarity, not identity, is the true test of infringement, than the present case.   (*Colman v. Crump*, 70 N. Y. 573.)

The defendants themselves do not seriously contest the liability to confusion by reason of the similarity of dress of their product with plaintiff's, but rest their defense mainly upon the ground that plaintiff has no proprietary right in the peculiar combination of colors which, they contend, was in prior use by other manufacturers before it was adopted by Luxor.   Special reference in

this connection is made to the Pennant cab, which was in the market up to 1923. An examination of the dress of the Pennant in colors shows that this claim is not well founded. While the lower part of the body had a similar cream-yellow color, the upper part was maroon and not black. Again, the coloring on the wheels was different, and the red striping on the body was lacking. Furthermore, even if it should be granted that some of the details which plaintiff is employing in its scheme are not original, it would nevertheless be entitled to protection against unfair competition in the use of its combination. As was appropriately said by the Supreme Court of the United States in *McLean* v. *Fleming* (96 U. S. 245, 254): " Words or devices, or even a name in certain cases, may be adopted as trade-marks which are not the original invention of the party who appropriates the same to that use; and courts of equity will protect the proprietor against any fraudulent use or imitation of the device by other dealers or manufacturers. Property in the use of a trade-mark, however, bears very little analogy to that which exists in copyrights or in patents for new inventions or discoveries, as they are not required to be new, and may not involve the least invention or skill in their discovery or application."

Moreover, if it should be assumed that the dress of the Luxor is similar to that of the discontinued Pennant, the owners of the former would nevertheless be entitled to injunctive relief against unfair competition by later users of the same makeup. In three different jurisdictions, including this State, the right of the manufacturers of Old Crow whisky was sustained against the later makers in the field, notwithstanding the fact that the former were not the original owners of the brand, nor had they obtained the right to it from the first makers, who had previously discontinued its manufacture. The cases in which the question came up were *Gaines & Co.* v. *Whyte Grocery, Fruit & Wine Co.* (107 Mo. App. 507); *Gaines & Co.* v. *Kahn* (155 Fed. 639); *Gaines & Co.* v. *Leslie* (25 Misc. 20). In *Rosenburg* v. *Fremont Undertaking Co.* (63 Wash. 52) the court said, in citing the authority of the first-mentioned case (at p. 55): " It is a recognized principle, also, that a trade-name can be abandoned or given up by the original appropriator, and that when it is so abandoned or given up, any other person has the right to immediately seize upon it and make use of it, and thus acquire a right to it superior, not only to the right of the original user, but to all the world."

The defendants also dwell upon the fact that numerous taxicabs of a make other than theirs use plaintiff's design. In view of the complete absence of a showing that the owners of these are prior

users, I am inclined to the belief that they are also imitators and that their infringement furnishes no excuse for defendants' misconduct. I can do no better, therefore, than to adopt the language of Mr. Justice LAWRENCE in *New York Cab Co.* v. *Mooney* (15 Abb. N. C. 152, 158) in which the defendant used a cab painted yellow, together with a gold band on the upper panel, both in imitation of plaintiff's: " The true doctrine in cases of this character is, I think, that no one should be permitted to so dress his goods or wares as to enable him to induce purchasers to believe that they are the goods of another.  *  *  *

" As I have already observed, my examination of the affidavits convinces me that the defendant's design is to induce the public to believe that his cab is the property of the plaintiff, and that the device which he has adopted and the color to which he has resorted, were adopted and resorted to for the purpose of misleading the public in that respect. By this I do not mean to say that the plaintiff is entitled to any exclusive property in color or in words, but I am clearly of the opinion that it has so far established a trade-mark in the words and colors, and device, as they are combined and used upon its cabs, as to entitle it to call upon a court of equity for protection against imitations designed to mislead the public and to deprive the plaintiff of its profits."

The case of *American Yellow Taxi Operators* v. *Diamond* (202 App. Div. 490) contains nothing in conflict with the views expressed here. There the temporary injunction was not made broad enough to restrain the yellow or orange and black color scheme of the plaintiff, but this phase was reserved for the trial. An analysis of the opinion shows two principal reasons for such determination: *First,* the identical color scheme had been used extensively both in New York city and in other places, so that it could no longer be said to be the distinguishing mark of any particular dealer, but had become more or less commonplace; *secondly,* the cabs of both the plaintiff and the defendants were bought in the given color dress from the same manufacturer, who had not given the plaintiff any exclusive right to such dress, but whose sale to others was evidence of quite the contrary intent. No such situation obtains in the instant case. The slight evidence of the prior existence of cabs arrayed similar to plaintiff's, even if construed most favorably to the defendants, does not show such continued usage as to create a presumption against the present association in the public mind of this dress with the Luxor. The brief existence of the Pennant and its disappearance from the market before the advent of the plaintiff would clearly point the other way. Besides, the undisputed fact

49

that the plaintiff supervises the get-up of its cars instead of purchasing them ready made in their particular color array, creates the other element which distinguishes this case from the " Yellow Taxi " controversies.

The question of laches raised by the defendants does not merit extended consideration. In applications for permanent injunctions for infringement of trade-mark or unfair competition this seems to constitute no defense. (*Menendez* v. *Holt*, 128 U. S. 514.) On motions for preliminary injunction it is sometimes a determining factor in closely contested cases, on the ground that the plaintiff, having delayed in making his complaint, no great harm can come to him if required to wait until the trial of the action. But there is no convincing evidence here of laches on the part of the plaintiff. Defendants' use, as has already been observed, dates from the early part of this year, while in March they were notified of plaintiff's objection. The latter may have been justified in waiting a reasonable time in order to obtain a practical index of the effect of defendants' competition and the possible confusion created by it in the public mind.

The plaintiff's application for relief includes a claim of infringement of its technical trade-mark, the shield design. Upon this issue it has not presented such a case as to make it proper to grant a temporary injunction at this stage. It is true that when used with plaintiff's color scheme defendants' shield accentuates the collocation of details which contributes to deception. (*Lalance & Grosjean Mfg Co.* v. *National Enameling & Stamping Co.*, 109 Fed. 317.) On the other hand, it seems that no such confusion might result by the use of a similar shield on another background.

While beside the issue, it may not be inopportune or inappropriate to observe that in matters of this sort the interests of the public are undoubtedly paramount. With the wide power at their command in relation to taxicabs, the public authorities may well take up for intelligent solution the problem of more securely guarding the public from obvious imposition. Too frequently is this particularly flagrant when a cab operating at a higher rate, by adopting the dress and appearance of the lower rate vehicle, deceives the patron into engaging it in the belief that he is hiring the less expensive conveyance. Some distinguishing mark or design, uniform in character, might easily be adopted which, at but casual glance even from the distance, would at once clearly indicate to which rate-paying class the given cab belongs. Lest this suggestion give rise to any possible misapprehension, it might be added that in respect to these defendants the deception as to rates does not apply.

The motion for a temporary injunction as to Leading Cab Co., Inc., and the other individuals named as defendants, must be granted. But there being no sufficient proofs at this time that the defendant Van Alstyne Motor Corporation furnishes anything beyond the chassis and perhaps permission to the use of the name " Hupmobile " on the imitation, the motion as to it must be denied, without prejudice. The motion as to Hupp Motor Corporation is deemed withdrawn by consent.

Settle order in which shall be provided the amount of the undertaking to be furnished by the plaintiff.