BRILLO MANUFACTURING COMPANY, Appellant, *v.* MAURICE LEVINE, Respondent.

First Department, October 28, 1932.

*Asher Blum* of counsel [*William Thomas Jones* with him on the brief; *Mock & Blum*, attorneys], for the appellant.

*Irving Driesen* of counsel [*Poses, Katcher & Driesen*, attorneys], for the respondent.

MARTIN, J. The issues involved herein relate to a trade-mark infringement and unfair competition. For a number of years the plaintiff has been manufacturing and selling a product known as " Brillo " packed in cartons, each containing a number of pads of a material known as steel wool, and a cake of soap. This product is used principally to clean aluminum pots and pans. One of the pasteboard containers in which the cleaner is sold by the plaintiff is annexed to the complaint. On the argument additional cartons with their contents sold by the plaintiff and defendant were submitted to the court for examination.

The affidavits submitted on behalf of the plaintiff show that for more than eighteen years it has been the leading concern in this country engaged in the manufacture and sale of kits for cleaning and polishing aluminum pots and pans; that plaintiff has distributed not less than 350,000,000 packages in the five years antedating this action; that it has distributed its product throughout the city of New York through upwards of 30,000 grocers and other retail stores handling this class of merchandise; that the color scheme of the package adopted by the plaintiff in selling its goods is

of a red and green combination with a white border at the edge of the box; that one package prepared and distributed by plaintiff has a pictorial trade-mark of a triangle which was registered by plaintiff in the United States Patent Office on May 24, 1921, as No. 142,947; that to date the plaintiff has distributed upwards of 70,000,000 kits of the last-mentioned package.

The complaint sets forth that the plaintiff's cartons have been sold and are now being sold in some sections where the retail customers do not read the English language, and where they do not carefully examine the trade-marks on the cartons, so that the pictorial appearance of these cartons becomes a basic identifying factor.

The defendant does not deny that plaintiff had the exclusive use of the red and green color combination on its boxes, as well as the triangular trade-mark, and the only difference which defendant can point out is that the green color upon his package is of a different shade from that used by plaintiff.

The plaintiff alleges that it has spent more than $3,500,000 in advertising its product in the leading newspapers and periodicals and by means of signs, posters, food shows and demonstrations in house to house campaigns. It further alleges that this is the first instance of infringement of plaintiff's rights and that no other concern has previously produced a carton which bore a triangle.

Notice was served upon the defendant by the plaintiff that it objected to the sale of any of these boxes which the defendant had on hand and which he admitted he received, totaling one hundred and seventy-five gross. The defendant admitted that he has on hand about one hundred gross, which would indicate that he disposed of seventy-five gross after receiving the notice from plaintiff.

Knowledge by the defendant that he was infringing upon plaintiff's rights is shown by the additional fact that he states he has adopted a package with a different color scheme. There is nothing in the record, however, to show that defendant ever made a single sale of his new type package prior to the time this motion was made, and he was unable to give the name of one customer to prove that this alleged new package was sold and shipped to the trade. It is apparent that defendant continued to sell his goods in the original package, which is similar to plaintiff's product.

In *Luxor Cab Mfg. Corp.* v. *Leading Cab Co., Inc.* (125 Misc. 764; affd., 215 App. Div. 798), where a temporary injunction was granted, the court said that where a person " uses a certain color combination as a distinguishing mark for his goods, no other person may use it on the same class of merchandise."

In *Dutton & Co.* v. *Cupples* (117 App. Div. 172) the court granted

a temporary injunction, stating: " Placed side by side, no one could fail to appreciate the difference between the publications, and yet could not fail to be struck by the careful attempt to produce an imitation. Seen apart from each other, so that they could not be compared, nothing would be easier than for an incautious buyer to be deceived by the resemblance and to purchase one of defendants' books, believing that he was purchasing plaintiff's." (See, also, *Wrigley, Jr., & Co.* v. *Grove Co.*, 183 Fed. 99.)

The affidavits set forth that numerous sales of the cheaper article have been made by defendant to people who evidently believed they were purchasing the goods manufactured by the plaintiff Brillo Manufacturing Company.

The obvious attempt of the defendant to profit by unfair competition is so apparent it requires no argument to establish that fact. The defendant is endeavoring to take advantage of the advertising done by plaintiff and the market created for its product, by offering a cheaper article and palming it off on the public to the injury, not only of the plaintiff, but to the people who purchase such merchandise. The size and color of the packages used by defendant as shown by the exhibits so closely resemble plaintiff's packages that defendant should be restrained from marketing his merchandise in the manner resorted to in the past.

It is evident from an examination of these papers that the defendant discovered a merchantable article, through the sale of which the plaintiff was making money, and designedly set out to sell a cheaper article by imitating the appearance of the package or box used by the plaintiff. The entire scheme was resorted to in order to unfairly compete with the plaintiff.

Where it has been so clearly established that an effort is being made to defraud a manufacturer by such unfair means, the court will not hesitate to grant an injunction. This court has frequently held that the method here pursued, which in this case is an attempt to profit from the extensive advertising of another, should be enjoined.

The order should be reversed, with ten dollars costs and disbursements, and the motion for a temporary injunction granted.

Finch, P. J., Merrell, McAvoy and Sherman, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted. Settle order on notice.